UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ARCHIE BAKER,

                Plaintiff,                Case No. 2:10-cv-285

v.                                    Honorable Gordon J. Quist

TOM MACKIE et al.,

                Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has been directed to pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Discussion

I.   Factual allegations

Plaintiff Archie Baker presently is incarcerated with the Michigan Department of Corrections and housed at the Chippewa Correctional Facility (URF), though the actions he complains of occurred while he was housed at the Kinross Correctional Facility (KCF). Plaintiff sues the following KCF employees: Deputy Warden Tom Mackie, Caseworker Debra Cushman, Resident Unit Officers (RUOs) (unknown) Wallis and (unknown) Marquette, and an unknown employee identified as "Jane/John Doe," who is responsible for processing incoming mail.

Plaintiff alleges that, in November 2009, Defendant Jane/John Doe received and processed mail addressed to Plaintiff by the United States Court of Appeals for the Sixth Circuit. The mail was returned to the court without Plaintiff's knowledge, marked "Unclaimed." On March 4, 2010, Plaintiff discovered the problem and filed a grievance, demanding a thorough investigation under MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ Q(4), and requesting discipline of the responsible employee. His grievance was denied at all levels. Plaintiff wrote directly to the Sixth Circuit and ultimately was sent a copy of the returned envelope. On May 28, 2010, Plaintiff filed a second grievance on the issue, naming Jeff Woods, Pam Ellis, and L. Berlinger, arguing that the named individuals, as responders to his first grievance, had failed to conduct an adequate investigation of his claim. His second grievance was rejected at all three steps as duplicative. At Step II of the grievance process, Defendant Mackie was the grievance responder. Mackie allegedly came to Plaintiff's unit and threatened to transfer Plaintiff if he continued to pursue his grievance. Later that day, when addressing Plaintiff about another grievance, Defendant Cushman and RUO

Mattern[1] told Plaintiff, "You don't want to mess with us, drop this nonsense." (Compl., ¶ 13, Page ID #7.)

The following day, Defendant Wallis searched Plaintiff's personal property. Plaintiff questioned Wallis why his cell was being searched, when it had been searched within the last 60 days, while other prisoner cells had not been searched during that period. Wallis allegedly told Plaintiff that his must have "pissed someone off," after which Wallis smiled at Mattern. After the property search, Defendant Wallis confiscated Plaintiff's television and legal footlocker. He also wrote a minor misconduct against Plaintiff for possession of contraband because the numbers on the items appeared to have been altered or were missing. Plaintiff was called out and reviewed on the minor misconduct later that night. The following morning, RUO Marquette held a hearing on the misconduct, over Plaintiff's objection. Marquette found that the numbers on the TV and footlocker were either altered or missing. The TV and footlocker were ordered to be destroyed.

On July 14, 2010, Plaintiff was packed up for transfer. Plaintiff's property was itemized, but the itemization did not include the legal property or TV. Because of an escape attempt by another prisoner, the transfer was not completed. Plaintiff's property was returned to him, but his radio was missing and his second footlocker was damaged. Plaintiff was again packed up for transfer on July 18, 2010. Plaintiff asked about his legal property, but no one knew anything about it. Plaintiff demanded that the sergeant be called. When the officer refused to call the sergeant, Plaintiff went to the dining room to speak with the sergeant. Plaintiff was called back and given a misconduct for being out of place. Plaintiff alleges that, because his unit had been called for chow, he was not out of place.

---

[1] RUO Mattern is not named as a Defendant in this action.

On July 19, 2010, Plaintiff was transferred to URF without his legal property and with a pending major-misconduct charge. Later that day, Plaintiff's legal property was returned to him, though the staples had been removed and the items were in disarray. On August 2, 2010, Plaintiff received a hearing on his major misconduct charge for being out of place. Plaintiff sought a copy of the log book, which was not produced. Based on other information submitted to the hearing officer, the incident took place at 18:00 hours, and the unit was not released for chow until 18:05. On the basis of the information, Plaintiff was convicted of the misconduct. Plaintiff alleges that the log book would have vindicated his claim that his unit was released to chow before the incident occurred.

Plaintiff raises several constitutional claims. First, he alleges that he was denied his right of access to the courts and his right to receive legal mail when Jane/John Doe returned his mail to the Sixth Circuit. Second, he alleges that Defendants Mackie and Cushman retaliated against him for filing a grievance, by directing that Plaintiff be harassed, that his property be confiscated, that he be issued misconduct tickets, and that he be transferred to another prison. Third, Plaintiff alleges that Defendant RUOs Wallis and Marquette denied him due process and retaliated against him by confiscating his personal property for the sole purpose of retaliating against him. Fourth, Plaintiff asserts that he was deprived of his personal property without due process and in violation of state law and policy.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Access to the Courts

Plaintiff claims that he was deprived of his right of access to the courts by Defendant Jane/John Doe, when s/he returned to the U.S. Court of Appeals a document addressed to Plaintiff. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Here, Plaintiff alleges only that a letter that was addressed to him from the Sixth Circuit was improperly returned to the court rather than delivered to Plaintiff. As a result, Plaintiff did not receive the mailing in a timely fashion, although he apparently received it at a later date. Plaintiff makes no allegation about the type of case in issue in the correspondence from the Sixth Circuit, nor does he indicate that the delay in any way prejudiced an ongoing habeas corpus or civil rights case. As a consequence, Plaintiff fails to state an access-to-the-courts claim.

### B. Retaliation

Plaintiff alleges that Defendants Mackie and Cushman retaliated against him for filing a grievance by directing other officers to harass him, confiscate his property, write false misconducts against him, and transfer him to another facility. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim,

a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith*, 250 F.3d at 1037; *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Plaintiff, however, does not complain that he was subjected to retaliation for simply filing a grievance. He alleges that he was retaliated against for abusing the grievance process by filing a *duplicative* grievance. Plaintiff does not directly dispute that his grievance was duplicative, but he states that the issues raised in his second grievance and the people named were both different. However, the grievances attached to the complaint reveal that the gravamen of both grievances was that his letter from the Sixth Circuit had been returned as unclaimed. His second grievance merely named the grievance responders as responsible parties and asserted that the investigation of the first grievance at all three steps of the grievance process was inadequate. (*See* Attach. to Compl., Page ID ##14-26.) As a consequence, based on Plaintiff's own attachments to the complaint, the grievance clearly was duplicative. Such a grievance is expressly prohibited by prison procedures. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶G(1). Moreover, the policy expressly indicates that the misuse of the grievance procedure may be penalized. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶¶ K, HH. Plaintiff cites no authority for the proposition that the First Amendment protects his misuse of the grievance process.

Even assuming that Plaintiff was engaged in protected conduct, Plaintiff cannot show that any Defendant took action that was both sufficiently adverse and causally connected to his protected conduct. Plaintiff first complains that his cell was searched by Defendants Wallis and Mattern, ostensibly for his having filed a grievance against Jane/John Doe for having returned his mail to the Sixth Circuit.[2] While a retaliatory cell search that includes the confiscation of legal materials may, in some circumstances, be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*, s*ee Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002), this is not such a case. Plaintiff's legal materials were returned to him only five days after the search, after Plaintiff arrived at another facility. Under these circumstances, I conclude that Plaintiff's allegations about his cell search are not sufficiently adverse. This is particularly true where Plaintiff does not dispute that the numbers on his television and legal footlocker were either altered or missing, and thus properly considered contraband under prison regulations. *See* MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶¶ R, BB, DD.

Moreover, Plaintiff fails to demonstrate the necessary causation between the protected conduct and the allegedly adverse action. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108; *see also Ashcroft*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "[C]onclusory allegations of retaliatory motive

---

[2] Plaintiff does not directly allege that his television or radio were taken from him in retaliation for the filing of his grievance, though he seeks their replacement as part of his remedy.

'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Here, Plaintiff merely alleges the ultimate fact of retaliation. Plaintiff fails to demonstrate a sufficient casual connection between his filing a grievance against an unknown mail employee and the search of his cell by Defendant Wallis. Although Defendant Wallis responded to Plaintiff's question about being searched with a comment to the effect that Plaintiff "must have pissed someone off," (Compl., ¶15), Plaintiff fails to sufficiently allege that Wallis was in any way connected with such retaliatory purpose. Plaintiff alleges no relationship between Wallis and Jane/John Doe or with Cushman or Mackie, who allegedly made implicit threats to retaliate. In such circumstances, Plaintiff's conclusory allegations fail to demonstrate more than a "sheer possibility that [] defendant [Wallis] has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

To the extent that Plaintiff alleges that Defendants Mackie and Cushman retaliated against him by transferring him to another prison, he fails to demonstrate that the conduct was sufficiently adverse to state a claim. As the Sixth Circuit explained in *Ward v. Dyke,* 58 F.3d 271 (6th Cir. 1995):

> Prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976). Moreover, the Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison

management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228.

*Ward*, 58 F.3d at 274. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Sigger-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee,* No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398.

Here, Plaintiff's transfer was from one Level II prison facility in the Upper Peninsula to another Level II prison facility in the Upper Peninsula. Plaintiff has no constitutional right to remain at a specific facility or to prevent a transfer to another facility for a permissible reason. *Ward*, 58 F.3d at 274. Plaintiff does not allege that his access to the courts was compromised as a

result of the transfer. Therefore, the transfer is insufficient to constitute an adverse action, and Plaintiff fails to state a claim for retaliation.

### B. Due Process

Plaintiff argues that his radio was taken by some unnamed person without due process. In addition, in his only allegation involving Defendant Marquette, Plaintiff suggests that Marquette deprived him of due process by inadequately investigating the minor misconduct issued with respect to the contraband television and foot locker.

Plaintiff's due process claims based on the deprivation of his property are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot meet his burden in this case. He has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the

institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.[3]

In addition, to the extent that Plaintiff claims that his minor misconduct conviction deprived him of some liberty interest without due process, he also fails to state a claim. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff makes no allegation that he was deprived of good time, and Michigan Department of Corrections policy

---

[3] Although Plaintiff does not directly allege that his television and second footlocker were taken without due process, such a claim would also be barred by the doctrine of *Parratt*, 451 U.S. 527.

does not permit such a deprivation on a minor misconduct conviction. *See* MICH. DEP'T OF CORR., Policy Directive 03.01.05, Attach. C & D (listing the simple possession of contraband as a Class III minor misconduct and listing the possible sanctions for a Class III misconduct). Plaintiff therefore had no liberty interest in the misconduct hearing.

### C. State-Law Claims

With respect to Plaintiff's allegations that Defendants' actions violated state law or policy, the Court declines to exercise jurisdiction. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The Sixth Circuit has stated that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and where all federal claims are dismissed prior to trial, the court ordinarily should dismiss the state-law claim without reaching its merits. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)). This claim will be dismissed without prejudice.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: December 7, 2010 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE